Clerk, call the next case please. 314-075 Brian Hofbauer, appellant by Robert Boyer v. Marsha Hofbauer, appellee by Miranda Soucy Mr. Boyer, good afternoon. Good afternoon, Your Honors. Police Court, Soucy. I, of course, represent the appellant in this case, Brian Hofbauer. And let me tell you that this case is about a tract of land that my client bought in the approximate year 1999, farm ground of about 150-160 acres. He bought this farm ground which lays adjacent to his brother's ground. The farm ground that my client bought was separated by a drainage ditch, over which there is a bridge. He bought the ground at the time that he was farming his brother's ground as a tenant. He farmed that ground, he bought the adjacent ground, and he started using the brother's ground as a means of accessing the ground north of the drainage ditch. He didn't like to use the bridge. The bridge became dilapidated, it became too small, not safe. He could get perhaps a truck over it to access his ground on the north side of the ditch. He could get a pickup truck, he could get a mower over it, but he couldn't get combines, large tractors, loaded grain bins and the like because they weren't safe. So what he did, he was farming his brother's ground to get to the north side of the ditch, to his ground north of the ditch. He used his brother's ground to bring in heavy equipment for combining, for removing the grain, went through his brother's ground to a public road. And he did that all the way up until the year 2000. His brother had died, and Mrs. Eppley, in this case, is his brother's widow. And she, for some reason in the year 2000, terminated his lease, or his oil lease, of her husband's ground. She inherited it, of course. I'm talking about the ground that was owned by his brother. He had an oil lease simply to farm. Cutting to the chase, we're familiar with the facts. Under what theory of law does he get a permanent easement across her property? We're not saying he has a permanent easement across the property. What I'm saying, he has an irrevocable license. And under what theory does he have an irrevocable license? Under the theory, Judge, that was the most recent case that dealt with it is Martin v. See. And Martin v. See is a case that we relied upon throughout this case and upon which we filed this suit. And Martin v. See very simply says that if he had permission to use the other grounds, to access his grounds, that it cannot be revoked if it constitutes a fraud. How would it be a fraud? It would say fraud as defined in Martin v. See by the very fact that the appellate knew that he had no access to his ground north of the bridge. He did have access, didn't he? Doesn't the drainage district, aren't they required by law to maintain that bridge? They could possibly be required, they could be required to put in a bridge. My client chose not to do that. So he landlocked himself. No, he didn't landlock himself, your honor. The respondent landlocked him by refusing to allow him to use her ground to get to that ground north of the bridge. So put the drainage district aside for a second. Because I live in farm country and you've got a creek running through your farm and you've got a bridge across it. And that bridge you have to access, maybe your farm equipment or whatever, and that bridge goes into disrepair. So that gives you a right to trespass on your neighbor's property to get to it? Under some circumstances such as this. And that is where he had used in the past with full permission from the other landowner to access that ground. But he didn't buy the property, you know, I mean the law, these type of things, he didn't buy the property. We know they weren't, you know, there were never a common piece of ground in the suburb. We've conceded that. And he testified himself that he didn't buy his property in reliance on any license. That is what he testified to, that is exactly correct. But he may not have understood the consequences of losing that lease. Well, I guess I'm just at a loss to understand when he's got a clear statutory right to tell the drainage district to fix that bridge and he said I don't want to do that, I want to go across my ex-sister-in-law's property. Several reasons for that, Judge. Number one, going across his ex-sister-in-law's property did no damage whatsoever to her property. I know you're going to say that doesn't make any difference, but it did absolutely no damage. Second of all, he may, the drainage district would probably have to have been sued in order to force him to do that. Well, apparently she's not adverse to lawsuits because here we sit. That he's not adverse to lawsuits? Pardon? That he's not, my client's not adverse to lawsuits? Right. Well, he did file this one after he was charged with a criminal offense for trespassing on her ground. But, and the third thing is that it, forcing the drainage district, if we could, and probably we could because this court reached a decision in that Peters versus Nuxgrove drainage district, that the drainage district had to provide a bridge suitable for modern equipment. It was decided by this court in the year 2000, I think it was, that he could. But he also was considering the fact that it would be expensive to put the bridge in. It would cost the adjoining landowners, the other landowners, served by the ditch. Taxes would have to be raised. And under the law, under these cases, which I have cited in the brief, he didn't have to do that. He didn't have to force the drainage district to do that and to increase everybody's drainage taxes. So he chose to go in the way that he had always had, causing no harm to the respondent or to the appellee. And the C case, Martin versus C, says that she has the obligation to allow him to do that. That's what it says. Let's just agree that you and I read that case differently. But, I mean, the law, licenses are always generally and less expressly made and usually with consideration and all that kind of stuff. And that's not a new concept. The law, this came from, our real property all really comes from England. And so this isn't some, and this has been the law for hundreds of years. And so the fact that she gave him permission, and so you can't get adverse possession by a permissive use. I don't care if you do it, if she gives you permission for 80 years, when she says your permission is revoked, it's revoked. Because you can't get a, and so the license is revoked, boy lot, you're done. And his concern for the taxpayers, and I'm guessing that his former sister-in-law also pays taxes. I was just trying to explain some of his thinking with regard to it. Why he chose to go the route of the license. They did that because of these cases, which your Honor reads differently than I. And if we were to say that Martin v. C. does give your client an opportunity to have a license under the fine exception, but didn't you say that your client, I mean you have to meet certain criteria. And you said your client testified that he didn't spend, you have to spend substantial amounts of money based on her letting him cross over that property to his. But he said he didn't buy his farm equipment or buy his farm based on her doing that. Right, so how is it that he spent substantial amounts of money? How does he meet that? He didn't, your Honor, and I think Judge Albrecht's requirement that he show such an item is misplaced. But that's what the Martin case says. No it doesn't, your Honor, it doesn't say anything about that at all. The Supreme Court did in Mueller. Or Mueller. The Supreme Court said that in Mueller. Yes, but it wasn't said in, I don't remember the facts in Mueller, but Martin v. C. is almost identical to our case here. And there was no evidence whatsoever of any expenditures, any improvements, any detrimental reliance, which Judge Albrecht said I had to show. And a subsequent case, by the way, and that is Feeney. The Feeney case, which I also cite in the brief, says that these are factors that only can be considered when you determine that a license is revocable or not. It's not a requirement that you have any of these factors. There's no requirement that you have detrimental reliance in a case of this type. Now Judge Albrecht said, well, she relied upon the Grigolet case. Grigolet, of course, was totally different because it had to do with wastewater going into some type of commission, drainage commission or whatever's around. They passed a law, said that you had to have a license to do that and pay a fee, whereas the appellant had never done that in the past. They'd always given their drain water to this, and they argued that they had an irrevocable license because they'd already done it in the past. But the appellate court said, no, that's different. All they got to do is pay a fee. And Grigolet has nothing whatsoever to do with the facts of why we have farm ground like this. And she relied upon, and that was misplaced. And then she ignored the Feeney case, which says that these are not requirements for the issuance of a license or making a license irrevocable. These are factors that can be considered when making that decision. Okay, thank you. The other thing I wanted to point out, if Grigolet requires a detrimental reliance, why did the 4th District Appellate Court decide that case at the same time as Martin v. Seed? Same month, same year. In Martin v. Seed, what did the person planning the easement, or license, what did they do? I'm sorry. The person planning the easement, planning the license in Martin v. Seed, what facts in that case specifically did the court find created this irrevocable license? They specifically said, Judge, that the fact that Mr. Wilson could not reach his farm ground because of the decision to revoke the license constitutes a great fraud. And that was the conclusion of the case. It's the fact that it made it landline, where the person could not use his ground, he couldn't get to it, made it useless, made it without value. That was the basis for the Martin v. Seed case. And it's no different here. Well, if the drainage district repaired that bridge, wouldn't that solve the problem? It would, but if you go to Martin v. Seed, they commented that they could have put a tin culvert across the ditch in Martin v. Seed, and the appellate court said, well, that's really silly. I mean, why should a person have to do that? Basically what they said, they said that they could do that, but it wasn't necessary because they had already had the use of the road, which was very convenient for the purposes of getting access to the ground. And we have a pathway away from the public road to our ground through Mrs. Hofbauer's ground. Same thing. So why should we have to go through all that when we got that situation? Judge, it's a matter of equity, really what it comes down to. And I think you have to consider all of the factors. Well, what's equitable about trespassing on somebody else's property because you don't want to go to the expense or you don't want to pursue other routes of access on yours? Private property, real estate is always treated especially under the law, and that's the reason I think the law on licenses and easements and stuff, very specific requirements, because we like to treat people's real estate as unique and special, and so I'm trying to find any equity in a guy who refuses to take advantage of a statutory remedy and in exchange says, I'll just trespass on the neighbor's property and argue that they've got this irrevocable, right? It's not their fault that that bridge has fallen into disrepair. No. And so I've got to tell you, I'm having a little trouble finding equity. I can tell you are, Your Honor. I've sometimes been pretty transparent. But if it were not a case where the appellate, sister-in-law, and her predecessor, her brother, her husband, had not given them permission, had not allowed them to use their ground for farming my client's landlocked property. Okay, and then what? So let's run with that. So they hadn't given them permission. That's right. So how was he damaged in any way by the virtue of that he had their permission for a while? Again, it's equitable, but as the court, and I'm not making all... No, I'm asking, my question is, is you said it would be different if they hadn't given him permission. Well, what would be, I mean, in other words, what did he do in reliance on that permission that has put him in a worse situation today than he would have been if she had said, you're not driving your farm equipment across my property 20 years ago. How would that have put him in any different position? It's the same in the two cases, the controversy. It's the same in the Finney case, cited by the Fifth District, that the actions of the licensor in terminating a license creates a great hardship under those circumstances. No bigger hardship than if they had denied permission to go across there to begin with. Well, perhaps that's true, that's total speculation. Well, tell me why I'm wrong. How is he in a worse position? How has he got a greater hardship because they're terminating that license now as opposed to if they'd have never granted him a license? I can't answer that, Judge, other than detrimental reliance, which is what you're getting to, is not the law. There's no requirement that there be any detrimental reliance. And I didn't make the law, but I'm reading it from Martin v. C. and from the Finney case. And that's what we're relying upon. If those cases hadn't been there, sure, we probably would have sued the Bravestitch to build a bridge. Thank you. Thank you. Thank you, Mr. Boyer. Ms. Susi? Good afternoon. Good afternoon. May it please the Court? Counsel. My name is Miranda Susi, and I am here along with my co-counsel, Jim Spiros, and we represent Marsha Hoffbauer. As this Court knows, this case hinges upon whether the parties entered into a lease or license, and if it was a license, whether said license was revocable. The trial court in this case properly granted summary judgment because, first, there was no license in this situation, and second, even if this Court finds that there was a license, it was revocable and there was no fraud upon the plaintiff. One of the factual situations here that is really important is that back in 1999, a lease was entered into as an oral lease to farm ground between the plaintiff and the defendant. There has never been a license. The plaintiff has, subsequent to this lease being terminated, tried to retroactively transform it into a license. However, a lease is something that allows a person to have an interest, a solitary interest, in possession of that land, and for a 10-year period, the plaintiff had sole possession of farmland and farmed that ground. He gave himself permission to use that farm ground to enter his own owned farm ground that was adjacent to the defendant's property that he leased. When that lease was terminated in 2009, the plaintiff then took it upon himself to begin trespassing over the land of the defendant. At no point in time did the plaintiff ever receive any sort of permission from the defendant, aside from that lease, to use that farm ground for the purpose of entering into his own farm ground. And for that reason, there has never been a license, and that would be why there should never be an inquiry into a fraud exception in terms of the ability of a license to be revoked. But, even if this court presumes that there was some sort of license or permission for the plaintiff to use the farm ground for the sole purpose of crossing and entering his own farm ground, there was no fraud. The Wilder case, I think, is probably the most salient in terms of the fraud requirements, and I know the plaintiff would like this court to consider them as factors, but it goes without saying that the cases that talk about these factors call them requirements. They are requirements of the fraud exception. The first of which, as this court has mentioned earlier, is that the plaintiff must have spent substantial amounts of money induced by the affirmative acts of entering into that license. The second of which is there must have been some sort of improvements made by the licensee, which partially benefit the licensor, and, and this is the operative word, there is an and, it is not an or, that the license or the revocation of that license results in an injury amounting to an oppression and great wrong. In this situation, we have not a single one of those factors. How did, prior to the appellant's purchase of that property, the people that fired it before, did they go across this property to get there? No. And I don't know that the record is necessarily very clear on that, but the plaintiff's testimony during his deposition indicated that prior to him purchasing larger combines, he solely used the bridge. It was not until he decided to himself go out and purchase larger farm equipment that that bridge became essentially unusable for those specific pieces of equipment. He still uses the bridge, and it's not dilapidated. He uses it for specific equipment. It's just that large equipment that became, so I'm assuming back in the 80s, when the equipment might have been a little bit smaller, it would have been not an issue at that point in time. And it seems to get bigger every year. Correct. Is that the type of expenditure that, though, that could qualify under that first requirement? Because I'm going to be able to go across this field to get into my field, I can buy bigger equipment because I'm not going to have to go across that wood bridge, around the drainage bridge. I think that you could possibly argue that. I don't think it meets that because he was farming a number of different acres, including his own farm ground, the lease that he had with the defendant. And so he had a large amount of farm ground that he was farming. And to say that the only reason he bought the farm equipment was so he could get to that little triangle of tract, I think would be a stretch in that situation. Plus, that first factor isn't just spending substantial money. It's spending substantial money in reliance and induced by the affirmative acts of the defendant. And what you have here is there are no affirmative acts of the defendant giving him permission to use that land for that purpose. And somehow benefiting the other estate. Correct, correct. We have no improvements to the defendant's land. We have no improvements to the plaintiff's land. We have no substantial money spent in reliance upon any sort of license that would have been given. And certainly... What do you say about Martin v. See? Well, Martin v. See is an interesting case because it comes after some of these cases that talk about the requirements. And the difficulty there is I don't think Martin v. See really goes through the three factors in depth like some of these other cases do. But that case is distinguishable in a number of ways. First of which, they had actual oral permission to use the land for a specified purpose of driving along a road to access their property. We don't have that in this situation. The second of which, at some point in time a municipality came in and cut off a corner of the licensee's property preventing them access to their corner. There was no bridge on their property. There was no other way of accessing the property whatsoever. And the only way to access it was through a road. In that case there was no drainage district as well. So here in the Martin v. See case there was no other remedy or legal remedy for the licensee to pursue in order to gain access to their property. In this situation you have the drainage district. You had the ability to increase the size of the bridge. And in that case it wasn't a bridge over a drainage district. There was a creek and there was no bridge and it was a quicksand creek. So they did not have the ability to build the same type of bridge that you would have here by way of, I guess, nature. So in those ways I think that case is completely distinguishable. The other issue in that case is in Martin v. See, the licensee was traversing over a road that a number of other people had permission to run over. So it was like a lot of the neighborhood people had used this road. In this situation the plaintiff is not using a road. He is traversing over income-producing property of the defendant. And should Marsha wish to go and lease it to someone else, should she wish to enter into any sort of lease for that little tract of land to give an easement to someone, she can't do that because he continues to trespass and use that portion of the property over her land. And it's not like it's a roadway. It's an income-producing area of property. Even if she wanted to till it for farmland, she couldn't right now because that's where he's driving. And so for all of those reasons, I think the Martin case just is... So talk about your motion for sanctions. Sure. Let me switch over here for a second. As this court is aware, there are three ways that you can succeed on a motion for sanctions. One is that the appeal is not reasonably well-grounded in fact. The second is that it's not warranted by existing law. And the third is that there's no good-faith argument for extension of the law or reversal of existing law. I don't think we have that third factor at all. And I would assume that counsel would agree with me. So really my argument here is that this appeal is not well-grounded in fact. There is not a scintilla of evidence that supports the plaintiff's position in this case. He has admitted time and time again that he does not have a license. He never had a license. He never had a handshake deal. He never had an oral deal. He never had anything in writing giving him permission to do what he did. He took it upon himself. The second part of that is that of the three factors under the fraud requirement, even if you assume there was a license, there's nothing. There's not a single piece of evidence in the facts that supports any of that. And that goes to the not warranted by existing law. If you look at the cases that have been cited, none of those cases support what the plaintiff has done here. This is nothing more than a personal vendetta of a brother-in-law against the widow of his brother because she revoked permission to use the land. This is frivolous litigation. And the only great oppression in this case is the great oppression that the plaintiff has made against Ms. Hoffbauer because it has caused her great stress, great expense, and instead of choosing to build a bigger bridge himself or go after the one legal remedy that made sense, which is go after the drainage district, which was their responsibility to build a bigger bridge, he decided to make it personal. And for those reasons, I would ask for appellate sanctions in this case. Thank you. Any other questions? Thank you. Mr. Royer, any rebuttal? Thank you very much. Judge, it is true that my client in his deposition said, no, I never got a license from Mrs. Hoffbauer. But what has happened is that he used her ground for in excess of ten years when she knew it. And so then the legal question on that is, so what? It is implied that he had permission to use that. What did she do during that period of time to stop him from using it? But my point is, let's assume she did. Let's assume she stood out there and handed him cookies as he drove across there in his combine. But at some point she said, you're done. Different question. I'm answering her argument that he never had a license. I'm saying he did because she gave him permission by allowing the use of her ground for the purpose of his farm. Wasn't he leasing the ground? Pardon me? Wasn't he leasing it? Wasn't he like a tenant farmer? Yeah, that gave him the right to go onto her ground and farm it. He didn't have a lease to go back to his. I'm not sure if you're saying there's a difference between a license and a lease. Well, of course there is. But the fact that he had a lease to farm her ground, the facts of this gave him a license to go back to his own ground because he did it for all of those years. Is there any evidence that she knew he was using the land to come across on his? She lived right there. That's not my question. Did she know that he was using it? Your Honor, the depositions indicate that she lived right there. She would have had to have known that. I don't know how you prove that she did or she didn't, but she was there all the time. She was living on the land that he was farming? Yeah, I think her house is up on the north side of her ground, which he went by her house or whatever to get into the field, and she had to have known. I suppose there's no direct evidence that she knew in there. The issue was never raised by anybody, and she never said that she didn't know it. Doesn't a license require that she knew? I mean, you're saying that she gave permission. But the circumstantial evidence is there, Judge, that she absolutely knew that she permitted this to happen. I just didn't see this as an issue in the case at any time because of the pleadings and where she lived and that type of thing. Circumstantial. She was never asked whether she knew or not, I guess. The other thing I wanted to reply to is that counsel cites these three elements that she says are relevant to the issue of fraud. Counsel, you're blind. Thank you. And that's true that these are factors, but they are not necessary factors. Not one of them is a necessary factor or detrimental reliance. If you look, if you read the Finney case, Finney v. Flanagan, it says a survey of case law on this issue reveals several common factors which militate against allowing revocation of a license. And then they go on to list those three things. None of the factors, there are factors to be considered in determining whether a license is revocable or not. Thank you, Your Honors. Any questions? Appreciate your courtesy. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible.